1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JEFFREY Q. MILES,

11            Petitioner,                    No. CIV S-04-1431 LKK EFB P

12        vs.

13   D. L. RUNNELS,

14            Respondent.              FINDINGS AND RECOMMENDATIONS
     _____/
15

16        Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ

17   of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a June 14, 2002, judgment

18   of conviction entered against him in Sacramento Superior Court on charges of first degree

19   burglary.  He seeks relief on the grounds that: (1) the trial court violated his right to due process

20   by allowing a security officer to stand behind him during his trial without a showing of a

21   "manifest security need" and by allowing jurors to see him in physical restraints; and (2) his

22   sentence of sixty years-to-life constitutes cruel and unusual punishment.  Petitioner also raises

23   several claims in the traverse.  Upon careful consideration of the record and the applicable law,

24   the undersigned recommends that petitioner's application for habeas corpus relief be denied.

25   ////

26   ////

                                            1

# I. Procedural and Factual Background[1]

> A jury convicted defendant Jeffrey Quinton Miles of two counts of first degree burglary, and the trial court found he had two prior serious felony convictions and strikes under the three strikes law. The court sentenced him to state prison for two consecutive indeterminate terms of 25 years to life and additional determinate enhancements totaling 10 years.
>
> * * *
>
> Defendant broke into two different apartments on separate occasions in January of 2002. In the second incident, the tenant arrived home while defendant was still inside. When the tenant confronted him, defendant said he had a gun and reached behind his back. The tenant ran out of the apartment, and defendant initially chased him before getting into his car and driving away.
>
> Defendant was 42 years old at the time of the offenses. He indicated he had worked at a car wash for four years but was laid off in October of 2001. He is apparently divorced and has children. The trial court received letters of support for defendant from some family members and friends.
>
> Defendant's prior record is lengthy and characteristic of a recidivist offender. As a juvenile, he committed battery, receiving stolen property, petty theft, and multiple burglaries. As an adult, he was convicted of: (1) assault with a deadly weapon in 1979; (2) obstructing a peace officer in 1982; (3) (misdemeanor) burglary in 1982; (4) obstructing a peace officer in 1983; (5) attempted first degree burglary in 1984; (6) first degree burglary in 1985; and (7) first degree burglary in 1990. Defendant's two prior strikes stemmed from the 1984 attempted burglary and 1990 burglary convictions.

Petitioner filed a timely appeal of his conviction in the California Court of Appeal for the Third Appellate District. Answer, Ex. A. The Court of Appeal affirmed petitioner's conviction and sentence in a reasoned decision dated August 19, 2003. Answer, Ex. D. Subsequently,

---

[1] The following summary is drawn, in part, from the August 19, 2003 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pp. 1-2, filed in this court as Exhibit D to respondent's answer. This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). Petitioner has failed to overcome the presumption with respect to the underlying events. The court will therefore rely on the state court's recitation of the facts.

petitioner filed a petition for review in the California Supreme Court.  Answer, Ex. F.  That

petition was summarily denied by order dated October 29, 2003.  Answer, Ex. E.

## II.   Analysis

### A.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state

court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established

United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law

set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially

indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different

result.  *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406

(2000)).

Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas

court may grant the writ if the state court identifies the correct governing legal principle from the

Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because

that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable."  *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not

enough that a federal habeas court, in its independent review of the legal question, is left with a

'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

**B. Petitioner's Claims**

### 1. <u>Violation of Right to Due Process</u>

Petitioner's first claim is that he was "denied due process and was prejudiced" when the trial court allowed a security escort officer to stand behind him during trial without any showing of need. He argues that the presence of the security officer "is closely analogous to the use of physical restraints and jail clothing." Pet. at 5. Petitioner also claims that jurors saw him being escorted from the courtroom in handcuffs, in violation of his right to due process. *Id.* In the traverse, petitioner claims that his right to due process was violated when the trial court informed the jury that petitioner was in custody and could not make bail, and that his trial counsel rendered ineffective assistance when he failed to object to the presence of the security guard. Traverse at 5, 6, 9.

On direct appeal, petitioner claimed that the trial court erred by telling the jury he was in custody and by allowing a security escort officer to stand behind him during trial. Opinion at 3. Alternatively, petitioner claimed his trial counsel rendered ineffective assistance in failing to object to the presence of the security officer. *Id.* The California Court of Appeal rejected these claims, reasoning as follows:

> **Trial Judge's Statement to Jury that Defendant was in Custody**
>
> Before trial, defense counsel made a motion to have defendant appear in court without physical restraints. The court noted that defendant did not seem to have any restraints and asked the bailiff, "I assume, . . . there isn't any reason that the Sheriff's Department is requesting any extraordinary physical restraints on the defendant?" The bailiff said the court was correct. The

prosecutor did not object, and the court granted defendant's motion.

After the trial, defendant requested new counsel to bring a new trial motion based on ineffective assistance of trial counsel. One of defendant's claims was that his counsel "failed to object to the court informing the jury that [defendant] was still incarcerated because [he] could not make bail." The court held a *Marsden* hearing to consider defendant's claims. (*People v. Marsden* (1970) 2 Cal.3d 118.)

At the hearing, defense counsel explained: "Early on, the court gave me the option of whether I wanted the jury to know [defendant] was or was not in custody. Given the fact that he was in custody, and I think pretty obviously, so I chose, tactically, that the jury be advised that he is in custody. [¶] And the court suggested, and I agreed, that you give them some kind of admonition so that they understand he's in custody not because he's violent or perhaps a three-strike candidate but simply because he can't make bail. [¶] I advised my client of that at the time . . . . And I was happy that the court gave that admonition rather than let the jury wonder why he is in and can't get out."

The trial court commented it was "wise for defense counsel to confront this issue head on." The court explained, "Jurors are not stupid. They know when they see an officer behind you that you are in custody. And unless we tell them why you're in custody, they may succumb to wild speculation. They may think you're dangerous. They may think you're a three-strikes defendant. They may assume all sorts of things . . . . [¶] And it is true bail will not be set in a three-strikes case and so perhaps it was a little misleading about not being able to make bail but that was to your benefit to tell them. And I did tell them that we don't think you're a flight risk, we don't think you're dangerous, we don't think you're guilty. I told them the only reason you're in custody is because you couldn't make the bail, which is true because there was none. So that's all to your advantage."

On appeal, defendant contends "the only possible meaning the jury could take from the court's misinformation that [defendant] could not make bail was that he was poor or unemployed." However, since defendant agreed to this procedure, he has waived his right to direct appellate review.

**Presence of Escort Officer Near Defendant**

Defendant argues on appeal (but not at the trial court) "that this record establishes that [defendant] was shadowed by an 'escort officer' who stood behind him during trial, that [defendant] presented no security risk to justify this procedure, [and] that defense counsel did not object, . . ." Defendant characterizes the

court's actions in advising the jury of his custody status and having an escort officer present as "remarkable" considering it granted his motions to be tried in civilian clothes without physical restraints. Defendant claims the court deprived him of the presumption of innocence and denied his rights to due process and a fair trial.

Preliminarily, we conclude that defendant's failure to raise the issue of the presence of the escort officer in a timely manner in the trial court waived his right to direct appellate review. Established case law recognizes that a defendant's failure to object waives similar issues, including the imposition of physical restraints (*People v. Tuilaepa* (1992) 4 Cal.4th 569, 583) or the use of identifiable jail clothes at trial (*People v. Taylor* (1982) 31 Cal.3d 488, 495-496). "A timely objection allows the court to remedy the situation before any prejudice accrues." (*Id* . at p. 496.) Additionally, tactical considerations may warrant emphasis on a defendant's custody status. (*Cf. ibid*.)

Although defendant suggests that the use of an escort officer is customary and any objection would have been futile, we do not agree. Defendant supports his argument by citing a declaration in another case that is not part of the record and by asserting that the trial court "implied" as much in its comments. Defendant has not shown that the court lacked discretion in the matter or that it made any statements to that effect. An objection would have allowed the parties and the court to make a record of the reasons, facts, and other attendant circumstances concerning the security precautions. The court could very well have taken some action to minimize the impact of an officer's presence, particularly if it was unduly obtrusive.

**Ineffective Assistance of Counsel**

We now consider defendant's fallback argument that his counsel was ineffective. To prevail on this claim, defendant must show his counsel's representation fell below an objective standard of reasonableness and, but for counsel's error, there is a reasonable probability of an outcome more favorable to defendant. (*See Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 [80 L.Ed.2d 674, 693-694, 697-698]; *People v. Ledesma* (1987) 43 Cal.3d 171, 215-218.) Further, defendant is not entitled to relief on direct appeal if the record does not show why counsel acted or failed to act in the manner defendant challenges unless there is no satisfactory explanation for counsel's conduct or counsel was asked for an explanation and failed to provide one. (*See People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) Here, defendant has not shown his counsel was ineffective for failing to object to the escort officer or for agreeing to have the jury admonished concerning defendant's custody status.

////

First, we consider the escort officer. Although it does not appear there was a security issue that necessitated the imposition of physical restraints, that is not to say there was no reason to have the officer present. Our state Supreme Court has recognized that the trial court has broad discretion concerning the use of such security measures, and "the presence of armed guards in the courtroom would not require justification on the record '[u]nless they are present in unreasonable numbers.'" (*People v. Jenkins* (2000) 22 Cal.4th 900, 995.)

Further, the use of security officers is not inherently prejudicial and must be considered on a case-by-case basis. (*See Holbrook v. Flynn* (1986) 475 U.S. 560, 569 [89 L.Ed.2d 525, 535]; *People v. Jenkins, supra*, 22 Cal.4th at pp. 996-997.) "While shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendants trial need not be interpreted as a sign that he is particularly dangerous or culpable. Jurors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence . . . . If they are placed at some distance from the accused, security officers may well be perceived more as elements of an impressive drama than as reminders of the defendants special status. (*Holbrook v. Flynn, supra*, at p. 569 [89 L.Ed.2d at pp. 534-535].)

Here, the existing record does not indicate that the security measures at issue were unreasonable or obtrusive so as to suggest that defendant was being singled out for special treatment. Contrary to defendant's speculation and hyperbolic argument, the record does not show "[t]he constant presence of [a] uniformed deputy, dogging [defendant's] footsteps" and "restrict[ing] effective communication [with] counsel," or that the officer "would have shadowed [him] to the witness stand had he testified." The record indicates little more than that an officer was present "behind" defendant at some parts of the trial, and that the jury could have deduced that defendant was in custody. In fact, defendant concedes in his reply brief that "the contemporaneous record does not delineate the escort officer's movements."

Based on the existing record, we cannot conclude that counsel should have objected to the presence of the escort officer or that defendant was prejudiced by counsel's failure to object.

In light of our conclusion, we next consider counsel's decision to have the court admonish the jury about defendant's custody status.

It is possible that references to a defendant's custody status may impinge a defendant's rights in some circumstances. (*See People v. Bradford* (1997) 15 Cal.4th 1229, 1335-1336.) But "an isolated comment that a defendant is in custody simply does not create the

> potential for the impairment of the presumption of innocence that might arise were such information repeatedly conveyed to the jury." (*Id.* at p. 1336.) And though defendant suggests that the reference to an inability to make bail suggested he was poor and had a motive for burglary, the court's admonition was designed to preclude other speculation and to dispel potential negative inferences concerning the nature and reasons underlying his custody status. Under the circumstances, the trial court and defense counsel acted in a reasonable manner to protect defendant's rights.

Opinion at 3-9

The state court record before this court supports the appellate court's findings of fact to the following extent. On the first day of trial, petitioner's counsel made an in limine motion that petitioner be allowed to appear without physical restraints. Clerk's Transcript on Appeal (CT) at 44, 59-67. The trial court granted this motion because all parties agreed there wasn't "any reason that the Sheriff's Department is requesting any extraordinary physical restraints on the defendant." Reporter's Transcript on Appeal (RT) at 2. The opinion by the California Court of Appeal explains that during the hearing on petitioner's motion for new trial, the parties discussed the trial court's admonishment to the jury that petitioner was in custody because he could not make bail. The reporter's transcript of the trial proceedings that has been lodged with the court does not reflect the trial court's advice to the jury that petitioner was in custody. However, neither party has challenged the state appellate court's factual summary of what transpired at the hearing on the motion for new trial. Accordingly, this court will presume the summary is correct and that the trial court made such an admonishment to the jury. Finally, the record before the court does not describe the escort officer's actions or where he was situated in the courtroom. However, the transcript of the sentencing proceedings reflects that an escort officer answered a question from the trial judge during those proceedings, thereby reflecting that there was a security officer present at that time. *Id.* at 1004.

////

////

### a.  <u>Escort Officer</u>

Petitioner claims that the presence of a security guard who was standing behind him during trial violated his right to due process and was "closely analogous to the use of physical restraints and jail clothing."  Pet. at 5.

The United States Supreme Court has concluded that the presence of armed guards in the courtroom is not equivalent to physically restraining the defendant.  *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986) (petitioner was not denied his constitutional right to a fair trial when, at his trial with five co-defendants, customary courtroom security force was supplemented by four uniformed state troopers sitting in first row of spectator section).  The deployment of security personnel during trial is not "the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest specific to each trial."  *Id.* Instead, when analyzing the propriety of security in the courtroom,

> All a federal court may do in such a situation is look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over.

*Id.* at 572.  *Cf. Estelle v. Williams*, 425 U.S. 501, 503, 505 (1976) (making a defendant appear in prison clothing poses such a threat to the "fairness of the factfinding process" that it must be justified by an "essential state policy").

Although petitioner states that a security officer was standing "behind" him, the record does not reflect the placement of the security officer during the trial.  As noted by the California Court of Appeal, "[t]he record indicates little more than that an officer was present 'behind' defendant at some parts of the trial, and that the jury could have deduced that defendant was in custody."  Opinion at 8.  Assuming *arguendo* that the guard was standing behind petitioner at all times during trial, there is no evidence that the presence of the guard was unduly prejudicial.  As explained by the United States Supreme Court, "[o]ur society has become inured to the presence

of armed guards in most public places; they are doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm." *Holbrook*, 475 U.S. at 569. There is no evidence in this case that the presence of the security guard suggested particular concern or alarm as to petitioner's dangerousness – especially since he was not shackled in any way and was dressed in civilian clothing. Similarly, the record does not reflect that the presence of the guard unreasonably suggested petitioner was dangerous or that he was being "singled out for special treatment." Opinion at 8. Indeed, petitioner's jury was specifically instructed by the judge that he was not in custody because he was a flight risk, dangerous, or guilty, but because he could not make bail. *Id.* at 4. Further, petitioner's failure to object to the presence of the security guard in the courtroom implies that the situation did not appear to pose "an unacceptable risk . . . of impermissible factors coming into play." *Holbrook*, 475 U.S. at 570 (quoting *Williams*, 425 U.S. at 505).

In short, petitioner has failed to demonstrate that the presence of the guard in this case was so inherently prejudicial as to pose an unacceptable threat to his right to a fair trial. *See Ainsworth v. Calderon*, 138 F.3d 787, 797 (9th Cir. 1998) (ratio of two guards standing behind one defendant in a capital murder case not prejudicial); *King v. Rowland*, 977 F.2d 1354, 1358 (9th Cir. 1992) (upholding ratio of three armed guards to single defendant); *Morgan v. Aispuro*, 946 F.2d 1462, 1465 (9th Cir. 1991) (no denial of due process where petitioner was tried in a security courtroom); *Spivey v. Head* 207 F.3d 1263, 1272-73 (11th Cir. 2000) (presence of eight security guards in courtroom not prejudicial where petitioner was not shackled, was permitted to stand to ask questions during voir dire, and the guards did not form a semicircle around the petitioner). The opinion of the California Court of Appeal to the same effect is not contrary to or an unreasonable application of federal law. Accordingly, petitioner is not entitled to relief on this claim.

////

////

## b. Jury Viewing Petitioner in Restraints

Petitioner claims that the trial court violated his right to due process by allowing the jury to view him in restraints. His claim is stated, in full, as follows: "Petitioner was also lead passed jurors handcuffed after court." Pet. at 5. Respondent argues that this claim has not been exhausted in state court.

Generally, a state prisoner must exhaust all available state court remedies, either on direct appeal or through collateral proceedings, before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). However, a federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable" *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005).[2] Notwithstanding the exhaustion requirement, this court recommends that petitioner's claim in this regard be denied.

Petitioner has provided neither legal nor factual support for this claim. He has failed to substantiate his allegation that the jury saw him in restraints or to explain any of the surrounding circumstances. Rather, the claim is unduly vague and must be denied. *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)).

Assuming *arguendo* that petitioner's jurors saw him in shackles, petitioner has failed to demonstrate that he suffered prejudice. It is true that the appearance of a defendant in shackles before a jury may constitute a violation of the defendant's right to due process. *Deck v. Missouri*, 544 U.S. 622 (2005). However, unjustified shackling does not rise to the level of constitutional error unless the defendant makes a showing that he suffered prejudice as a result. *Id.* (citing *United States v. Olano*, 62 F.3d 1180, 1190 (9th Cir 1995) and *United States v. Halliburton*, 870 F.2d 557, 561-62 (9th Cir. 1989)). *See also Cox v. Ayers*, 588 F.3d 1038, 1044

---

[2] In order to be colorable, a claim must have both legal and factual support. *Beaudry Motor Co. v. Abko Properties, Inc.*, 780 F.2d 751, 756 (9th Cir. 1986).

(9th Cir. 2009). In the Ninth Circuit, "only the most egregious kind of shackling has been found . . . to deny due process." *Castillo v. Stainer*, 983 F.2d 145, 148 (9th Cir. 1992). Petitioner has failed to show that what the jury saw was so prejudicial as to violate his right to a fair trial. Accordingly, he is not entitled to habeas relief on this claim. *See United States v. Leach*, 429 F.2d 956, 962 (8th Cir. 1970) ("[i]t is a normal and regular as well as a highly desirable and necessary practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this").[3]

### c. Trial Court's Advisement about Petitioner's Custody Status

Petitioner claims in the traverse, as he did on direct appeal, that his right to due process was violated when the trial court informed the jury that petitioner was in custody. Traverse at 5. As explained above, the trial court apparently informed petitioner's jury that he was in custody because he couldn't make bail. At the hearing on petitioner's motion for new trial, the trial court stated that it was "wise" for defense counsel to allow the court to give this advisement because otherwise the jurors may have "succumb[ed] to wild speculations" about the reasons for petitioner's obvious custody status. Opinion at 4. The trial court believed that the advisement was "all to [petitioner's] advantage." *Id.* The state appellate court concluded that the trial court's advisement about petitioner's custody status was a reasonable attempt to protect petitioner's rights. *Id.* at 9.

As discussed above, habeas relief is only available on the basis of a violation of federal law, as set forth by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *see Williams*, 529 U.S. at 412 ("Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."). In his direct appeal, petitioner cited *Estelle v. Williams*, 425 U.S. 501 (1976) in support of this claim. Answer, Ex. A at 11. *Estelle* did not hold that due process is

---

[3] For these same reasons, petitioner's remark, made for the first time in the traverse, that he "argued" with his trial counsel about "being handcuffed while jurors observed" does not merit habeas corpus relief. *See* Traverse at 11.

violated when a trial court informs the jury of the defendant's custodial status. Rather, in *Estelle*, the Supreme Court held that requiring a defendant to wear prison clothing throughout a trial may violate his due process rights. 425 U.S. at 504-05. Here, unlike the prison garb and excessive security at issue in *Estelle*, which the Supreme Court noted were a "constant reminder" of the defendant's custodial status, 425 U.S. at 504, the trial court simply advised the jury that petitioner was in custody because he was unable to make bail. *Estelle* does not "clearly establish" a right to have the jury remain ignorant of petitioner's custodial status within the meaning of AEDPA. Accordingly, the trial court's advice to the jury about petitioner's custodial status does not provide grounds for habeas relief.

Moreover, as noted by the California Court of Appeal, the trial court specifically directed the jury not to draw any negative inference from the fact that petitioner was in custody. There is an "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). There is nothing in this record to suggest petitioner's jurors did otherwise. Accordingly, petitioner is unable to demonstrate that he suffered prejudice as a result of the trial court's advisement. *See Brecht v. Abrahamson*, 507 U.S. 619, 627 (1993) ("[A] federal court may grant habeas relief based on trial error only when that error had substantial and injurious effect or influence" on the proceedings); *Fry v. Pliler*, 551 U.S. 112 (2007) (on habeas review, a federal court must assess the prejudicial impact of a trial error under the *Brecht* standard in all habeas cases regardless of the error standard applied by the state court). For these reasons, petitioner is not entitled to relief on this claim.

### d. Ineffective Assistance of Counsel

In the traverse, petitioner claims that his trial counsel rendered ineffective assistance when he failed to object to the presence of the security guard at petitioner's trial and when he allowed the trial court to advise the jury that petitioner was in custody. Traverse at 9-11. This claim was also raised on direct appeal in state court. With regard to the presence of the security guard, the California Court of Appeal concluded that trial counsel did not render ineffective

assistance in failing to object because there was no evidence the security procedures were unduly prejudicial. With regard to the issue of petitioner's custody status, the state court concluded that counsel's decision to allow the trial court to tell the jury petitioner was in custody was reasonable because it prevented the jury from assuming that petitioner was dangerous or a three-strike candidate.

To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

For the reasons set forth above, petitioner has failed to demonstrate that he suffered prejudice as a result of his trial counsel's failure to object to the presence of the security guard during trial or to the trial court's admonition that petitioner was in custody because he could not make bail. There is no reasonable probability that, but for counsel's actions, the result of the proceeding would have been different. Accordingly, petitioner is not entitled to relief on these claims.

### 2. Cruel and Unusual Punishment

Petitioner claims that his sentence of 60 years-to-life constitutes cruel and unusual punishment. He argues that his sentence is "grossly disproportionate to the offense committed or the culpability of the offender." Pet. at 5. Petitioner also complains that the trial court declined

to "reduce [his] status to a second-striker." *Id.*

The California Court of Appeal rejected this claim, reasoning as follows:

> Defendant claims his sentence violates the federal and state Constitutions because it is cruel and/or unusual. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) Defendant has not shown his counsel directly raised the constitutional issues in the trial court, although counsel did ask the court to exercise its discretion to dismiss some of defendant's prior strikes. Under the circumstances, the record is sufficient to address the constitutional issues and we may thereby forestall any claim that defendant's counsel was ineffective for failing to directly raise them. (*See People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.)
>
> The federal Constitution does not require strict proportionality between a sentence and the crime for which it is imposed; "'it forbids only extreme sentences that are "grossly disproportionate" to the crime.'" (*Ewing v. California* (2003) 538 U.S. 11 [155 L.Ed.2d 108, 119] (*plur. opn. of O'Connor, J.*), quoting *Harmelin v.. Michigan* (1991) 501 U.S. 957, 1001 [115 L.Ed.2d 836, 869] (opn. of Kennedy, J.).) A punishment may violate the California Constitution if "it is so disproportionate to the crime . . . that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) Three factors are often considered in evaluating a claim under the California Constitution: (1) the nature of the offense and the offender; (2) a comparison with the penalty for more serious crimes in the same jurisdiction; and (3) a comparison with the punishment imposed for the same offense in different jurisdictions. (*Id.* at pp. 425-427.) However, "[t]he sole test remains . . . whether the punishment 'shocks the conscience and offends fundamental notions of human dignity.'" (*People v. Dillon* (1983) 34 Cal.3d 441, 487, fn. 38, quoting *In re Lynch, supra,* 8 Cal.3d at p. 424.)
>
> Defendant's three strikes sentence does not violate either the state or federal Constitutions. The sentence does not merely reflect the commission of the current offense; it also reflects defendant's recidivist criminal behavior. (*See People v. Kinsey* (1995) 40 Cal.App.4th 1621, 1630; *see also Rummel v. Estelle* (1980) 445 U.S. 263, 284-285 [63 L.Ed.2d 382, 397].) And here, defendant's record, including his prior strikes and the relatively serious current offenses, indicate he has continued to pursue a life of crime. "If increased penalties do not deter the repeat offender, then society is warranted in segregating that person for an extended period of time." (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1512.) "That California's punishment scheme is among the most extreme does not compel the conclusion that it is unconstitutionally cruel or unusual." (*Id.* at p. 1516.) Indeed, the United States Supreme Court recently rejected a federal constitutional challenge to a three strikes sentence for a recidivist offender who stole some golf clubs.

(*See Ewing v. California, supra*, 538 U.S. 11 [155 L.Ed.2d 108].)

Opinion at 9-11.

In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the United States Supreme Court found that in addressing an Eighth Amendment challenge to a prison sentence, the "only relevant clearly established law amenable to [AEDPA's] 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear and applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991); *Solem v. Helm*, 463 U.S. 277, 290 (1983); and *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)). *See also Taylor v. Lewis*, 460 F.3d 1093, 1097 (9th Cir. 2006). The Supreme Court in *Andrade* thus concluded that two consecutive twenty-five years to life sentences with the possibility of parole, imposed under California's Three Strikes law following two petty theft convictions with priors, did not amount to cruel and unusual punishment. 538 U.S. at 77. In *Ewing v. California*, 538 U.S. 11 (2003), the Supreme Court held that a sentence of twenty-five years to life imposed for felony grand theft under California's Three Strikes law did not violate the Eighth Amendment.

Following the decision in *Andrade* the Ninth Circuit held that a third strike sentence of twenty-five years to life in prison for a third shoplifting offense, a "wobbler" under state law, constituted cruel and unusual punishment. *Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004).[4] In so holding, the court relied upon the limited and non-violent nature of the petitioner's prior criminal history and the fact that the petitioner's only prior period of incarceration had been a single one-year jail sentence. *Id.* at 768-69. Thereafter, in *Rios v. Garcia*, 390 F.3d 1082 (9th Cir. 2004), the Ninth Circuit concluded that a third strike sentence of twenty-five years to life for the theft of two watches having a combined value of $79.98 was not cruel and unusual. The court distinguished the holding in *Ramirez* from the situation it confronted, finding that the

[4] A "wobbler" is an offense that can be punished as either a misdemeanor or a felony under applicable law. *See Ferreira v. Ashcroft*, 382 F.3d 1045, 1051 (9th Cir. 2004).

petitioner in *Rios* had a "lengthy criminal history," had "been incarcerated several times," and that the prior strikes used to enhance the petitioner's sentence had "involved the threat of violence." *Id.* at 1086.

Petitioner's sentence does not fall within the type of "exceedingly rare" circumstance that would support a finding that his sentence violates the Eighth Amendment. As noted by the California Court of Appeal, petitioner had a lengthy criminal history, including juvenile convictions for battery, receiving stolen property, petty theft, and multiple burglaries; and adult convictions for assault with a deadly weapon, obstructing a peace officer, and burglary. Under these circumstances, the state courts' rejection of petitioner's Eighth Amendment claim was neither contrary to, nor an unreasonable application of clearly established federal law. This claim for relief should therefore be denied.

### 3. Claims Raised in the Traverse

Petitioner raises additional claims in his traverse that were not raised in the instant petition or in petitioner's state court filings.[5] Specifically, he alleges that his trial counsel rendered ineffective assistance because he failed to investigate "the license plate issue." Traverse at 11. Petitioner also claims that his trial counsel was operating under a conflict of interest because he had previously prosecuted petitioner for burglary. *Id.* at 11-14. Finally, he claims that "California's application of the 3-Strikes Law, in cases where prior 'strike convictions' were plea agreements, guaranteeing 5 year enhancements – only – to new felony convictions" violate the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. *Id.* at 20.

A Traverse is not the proper pleading to raise additional grounds for relief. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). "In order for the State to be properly advised of

---

[5] The author of petitioner's traverse informs the court that he is an "inmate helper" who volunteered to write the traverse on petitioner's behalf. Traverse at 12-13. He explains that petitioner is unable to litigate this matter "due to lack of cognizant abilities." *Id.* at 12.

additional claims, they should be presented in an amended petition or . . . in a statement of additional grounds. Then the State can answer and the action can proceed." *Id. See also Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("we review only issues which are argued specifically and distinctly in a party's opening brief"). Accordingly, petitioner's claims raised for the first time in the traverse are not properly before the court and must be denied. Furthermore, even if petitioner had sought leave to amend to add these unexhausted claims, he is not entitled to habeas relief for the reasons set forth below. Thus, any amendment at this time would be futile.

### a. Trial Counsel's Failure to Investigate

Petitioner has failed to substantiate his vague claim that his trial counsel rendered ineffective assistance because he failed to investigate "the license plate issue." He has provided neither legal nor factual support for this claim. Accordingly, any such claim must be denied. *See Jones*, 66 F.3d at 204; *James*, 24 F.3d at 26.

### b. Conflict of Interest

Petitioner has also failed to provide adequate support for his claim that his trial counsel operated under a conflict of interest. In support of this claim, petitioner attaches a letter from his trial counsel which reads as follows:

> I'd also like to confirm in writing what I disclosed to you this morning. I discovered today during my review of your previous convictions that I was the prosecutor during a portion of your 1990 burglary prosecution (it appears that I conducted the preliminary examination, although not the trial). I don't have any independent recollection of you or your case, nor do I feel that this represents any kind of a conflict of interest, or that this will impair my ability to represent you in any way. However, if you feel differently, please let me know, and we can discuss our options.

Traverse, first exhibit.

The Sixth Amendment right to counsel includes the right to counsel of undivided loyalty. *Wood v. Georgia*, 450 U.S. 261, 271-72 (1981). "In order to demonstrate a violation of his Sixth Amendment rights on the basis of an alleged conflict, a defendant must establish that an actual

conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S.

335, 350 (1980). *See also Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002) (an actual conflict "is

not something separate and apart from adverse effect"); *Bonin v. Calderon*, 59 F.3d 815, 825

(9th Cir. 1995). An adverse effect in the *Cuyler* sense must be one that "significantly worsens

counsel's representation of the client before the court or in negotiations with the government."

*United States v. Mett*, 65 F.3d 1531, 1535 (9th Cir. 1995). Although a defendant alleging a

conflict of interest "need not demonstrate prejudice," he must prove that "counsel actively

represented conflicting interests." *Cuyler*, 446 U.S. at 349. Courts "generally presume that the

lawyer is fully conscious of the overarching duty of complete loyalty to his or her client."

*Burger v. Kemp*, 483 U.S. 776, 784 (1987).

The state court record reflects that prior to the commencement of the evidence portion of

trial, petitioner's counsel informed the court that he had had a role in the prosecution of

petitioner for one of his prior convictions. RT at 5. Counsel explained that he conducted the

preliminary examination and was present during a number of pretrial hearings. *Id.* Counsel also

stated that he had informed petitioner of this fact and that neither he nor petitioner perceived any

conflict of interest. *Id.* On the same page of transcript, the following colloquy then appears:

> THE COURT: Mr. Miles, are you indeed aware that [the
> prosecutor] conducted a preliminary hearing and charged against
> you [sic] some 12 years ago?
>
> THE DEFENDANT: (Witness nods head), yes, yes, sir.
>
> THE COURT: And notwithstanding that knowledge, you are
> satisfied to have him represent you here in this trial?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Ms. O'Connor (the prosecutor), do you have anything to add?
>
> MS. O'CONNOR: No, Your Honor. I just wanted to for
> clarification purposes that the waiver be on the record that he has
> no problem with (defense counsel's) representation of him now.
>
> THE COURT: All right.

There is no evidence in this case that petitioner's trial counsel was actively representing conflicting interests or that counsel's involvement as the prosecutor during the preliminary hearing in petitioner's prior criminal case caused an adverse effect in counsel's performance at petitioner's later trial on the instant charges. Petitioner's unsupported allegations in the traverse also fail to rebut the presumption that his trial counsel was acting according to his duty of loyalty. On the contrary, counsel diligently notified both petitioner and the trial court of his prior role as the prosecutor in one of petitioner's earlier cases. Counsel took care to have the trial court assure itself on the record that the petitioner wanted trial counsel to continue the representation notwithstanding the prior role as a prosecutor. There is no evidence that the trial counsel actively represented conflicting interests or breach a duty of loyalty to the petitioner. For these reasons, petitioner is not entitled to relief on this claim.

### c.   Three Strikes Law/Breach of Prior Plea Agreement

Nor is petitioner entitled to relief on his challenge to California's Three Strikes Law, as articulated in the traverse. Petitioner claims, in effect, that his sentence under the Three Strikes Law violated his plea agreement in a previous case, which provided that any future felony conviction could result in a maximum increased sentence of five years. Traverse at 21.

A guilty plea is invalid if induced by a promise which renders the plea involuntary. *Machibroda v. United States*, 368 U.S. 487, 493 (1962); *Chizen v. Hunter*, 809 F.2d 560, 561 (9th Cir. 1986). When a plea agreement rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled. *Santobello v. New York*, 404 U.S. 257, 262 (1971); *Johnson v. Lumpkin*, 769 F.2d 630, 633 (9th Cir. 1985). Claims of a breached plea agreement are analyzed according to contract law standards of interpretation, such that a court looks to what was reasonably understood by the parties to be the terms of the agreement and whether or not those terms were fulfilled. *See United States v. Kamer*, 781 F.2d 1380, 1387 (9th Cir. 1986).

Petitioner contends that his sentence in this case violates the plea agreement he entered into in 1986 because he was informed at that time that any future enhancements would be for a five-year period if applied against a felony conviction. Although petitioner attempts to phrase his claim in terms of a breach of the 1986 plea agreement, his argument is that the prosecutor and the court promised him in 1986 that state law would not change or, that if it did, the change would not be enforced as to him. Petitioner has made no showing that such a promise was made and it is a fair assumption that the subjects were not addressed at those earlier proceedings. Moreover, applying contract law, a prosecutor would have no authority to make such a promise. *See Johnson*, 769 F.2d at 633 (a promissor must have authority to make the promise).[6]

Petitioner does not assert that he received a state prison term for his earlier crimes greater than that stated in the plea bargain for those offenses. He concedes he was specifically advised that his priors could be used as part of an enhancement allegation in future criminal proceedings. At the sentencing proceedings on the instant crimes, petitioner raised no objection to his sentence of 60 years-to-life on the ground that it violated the terms of his previous plea agreement. RT at 1002-07. Nor has petitioner cited any case holding that use of a current sentencing enhancement law constitutes a breach of enhancement provisions contained in a plea agreement that was entered into prior to passage of that law. Under these circumstances, this claim is without merit.

Petitioner also appears to be arguing that his sentence under the Three Strikes Law violates the rulings in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and related cases.[7] Traverse at 28. This claim is based, in part, on "the

---

[6] At the time of petitioner's 1986 convictions, when a defendant suffered a serious felony conviction, California Penal Code § 667(a) mandated a consecutive five-year sentence enhancement for a prior serious felony conviction. *Wheeler v. Yarbrough*, 352 F. Supp.2d 1085, 1092 n.10 (C.D. Cal. 2005).

[7] In *Apprendi*, the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires any fact other than a prior conviction that "increases the penalty

Supreme Courts broad sweeping language" in these rulings and an evaluation of "*Apprendi's* 'fairness.'" *Id.* Petitioner has failed to explain how the rulings in *Apprendi* and *Blakely* are applicable to his sentence under California's Three Strikes Law. Accordingly, he is not entitled to relief on this claim.

### 4. <u>Request for Evidentiary Hearing</u>

On March 9, 2006, petitioner filed a request for an evidentiary hearing on his claims. He notes that he did not receive an evidentiary hearing in state court.

Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> > (A) the claim relies on-
> >
> > (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense;

28 U.S.C. § 2254(e)(2).

---

for a crime beyond the prescribed statutory maximum" to be "submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 490. In *Blakely*, the United States Supreme Court decided that a defendant in a criminal case is entitled to have a jury determine beyond a reasonable doubt any fact that increases the statutory maximum sentence, unless the fact was admitted by the defendant or was based on a prior conviction. 542 U.S. at 303-04. In *United States v. Booker*, 543 U.S. 220 (2005), the United States Supreme Court applied *Blakely* to the Federal Sentencing Guidelines. In *Cunningham v. California*, 549 U.S. 270 (2007), the Supreme Court, citing *Apprendi* and *Blakely*, held that California's Determinate Sentencing Law violates a defendant's right to a jury trial to the extent it permits a trial court to impose an upper term based on facts found by the court rather than by a jury. The Ninth Circuit subsequently held that *Cunningham* may be applied retroactively on collateral review. *Butler v. Curry*, 528 F.3d 624, 639 (9th Cir. 2008).

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005). A federal court must take into account the AEDPA standards in deciding whether an evidentiary hearing is appropriate. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). A petitioner must also "allege[] facts that, if proved, would entitle him to relief." *Schell v. Witek*, 218 F.3d 1017, 1028 (9th Cir. 2000).

The court concludes that no additional factual supplementation is necessary and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant petition. In addition, for the reasons described above, petitioner has failed to demonstrate that the state courts' decision on his claims is an unreasonable determination of the facts under § 2254(d)(2). *See Schriro*, 550 U.S. at 481. Accordingly, an evidentiary hearing is not necessary or appropriate in this case.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied;

2. Petitioner's March 9, 2006 request for an evidentiary hearing be denied; and

3. The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). If

petitioner files objections to the findings and recommendations, he may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). A certificate of appealability may issue under 28 U.S.C. §2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

DATED: February 5, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE